Our next case for argument is 22-1521, the Regents of the University of California versus the ITC. Mr. Hanson, please proceed. Good morning, your honors. May it please the court. This morning I would like to address errors in the commission's analysis of four issues. The molding and transparent claim limitations, the doctrine of equivalence, and obviousness. Regarding molding, the commission's rulings regarding molding should be reversed because they are based on erroneous claim construction. First, the commission's construction of molding was erroneous because it imported a process limitation into these apparatus claims. The ALJ found at the markman stage that molding is not a process limitation. As a housekeeping matter, can I just ask a quick question, which is the molding limitation, if it is supported by substantial evidence that covers all the accused products and sort of resolves the entire case, we wouldn't have to reach the other issues, is that right? If you affirm the commission's conclusions that the molding limitation was correctly construed and unmet, then yes, you wouldn't have to reach the other issues. What if we were to move on and affirm, just hypothetically, the invalidity? I'm just wondering, what does that do? It doesn't actually invalidate the patents, is that correct? It's without prejudice because the ITC's determinations on patent issues are not prejudicial to other proceedings. Would that be some form of collateral estoppel against the patent owner from trying to enforce these patents? I don't believe so, but I haven't researched that exhaustively. I'm trying to hear about the molding, so please go on. Thank you, Your Honor. Again, the ALJ found at the markman stage that the molding limitation is not a process limitation, yet the construction requires that the molding be made by, or as if by, a mold. That construction focuses on how the molding is made instead of what the structure of the molding is. I guess the pushback to that is that maybe that kind of construction, yes, in one way it could be met by forming the component with an actual mold, but the construction seems to be capturing something broader than a specific process for making the component. It seems to be really getting more at looking at the physical characteristics of the component and seeing if it's consistent with the component as having been formed by a mold or as if it had been made by a mold. The expectation is that the resulting component is something that looks clean and smooth and even and regular throughout, so that even if it wasn't made by a mold, you could still meet this construction because it looks like it has the physical qualities as if it had been made by a mold. The issue I have with that is that the ALJ also found that the ordinary meaning of molding is very broad. He found that it encompasses the forming of an object out of any malleable substance by any means, and there can be no dispute that the accused moldings would meet that broad definition of the ordinary meaning the ALJ found. Of the word mold as a verb. As a verb, it's true that if I take just a clump of clay and I start shaping it with my hands, I can be said to be molding it, but that's not what's going on here. This is mold as in fit the mold, uniformity. That's one understanding of what the term means, but if we look at the embodiments disclosed in the specification, they have a variety of shapes, and they also have... Every one of them could be a mold. But as a mold, it doesn't have to be simple. It can be very, very complicated, but every time you use it, you come out with the same thing. That's a fair point. If that were the understanding of what the ALJ said, then is there really not substantial evidence to support the finding of non-infringement under that view because of the irregularities from piece to piece of the, in the pictures, et cetera, on the accused product? So with the proviso that we disagree with the claim construction as legally erroneous, the court, or excuse me, the commission also committed legal error by focusing on selective portions of the accused filaments, only on the ends, and ignoring other portions of the filaments, the majority of the filaments that do not have the random irregularities and uneven surfaces that the commission relied on as evidence that they were not formed as if by a mold. And under this court's case law, if a claim reads merely on a part of an accused device, that is enough for infringement. And imperfect practice of an invention does not avoid infringement. Our... This portion argument, was it made below? I don't think it was made below. I think this portion argument on the molding limitation is something that was raised, it was never raised in front of the ALJ. I can... It was raised for the first time in your brief to the commission. And I think, you know, under commission rules, that's untimely. The reason for that was that the ALJ's construction that excluded random irregularities and uneven surfaces was first disclosed to us in his final initial determination. So our first opportunity to address that was in our post-hearing briefing. But wasn't the whole point of the arguments at trial, or the expert on the other side pointing to the ends of these filaments, showing unevenness or irregularities? I mean, there... In that way, you were clearly on notice of what the theory was for why their accused products lacked a molding. The experts testified, I believe to that effect, Dr. Shanfield, if I'm remembering correctly, was testifying about the manufacturing process. Oh, Dr. Eden, too. And Dr. Eden. I believe Dr. Schubert also testified on the other side of that, that in his view, a person of ordinary skill would understand the encapsulants on the accused filaments to be a molding within the meaning of that term in this particular case. Right, so the point is, the terms of the debate in front of the trial, ALJ, was that the ends of the filaments also mattered. Nobody argued, hey, you gotta lock that off and not focus on that. You can only focus on my preferred, the portion I prefer to focus on in terms of infringement. That wasn't argued in your pre-hearing brief. That wasn't argued at trial. That wasn't argued in your post-hearing brief to the ALJ. It came up for the first time in your petition to the commission. And of course, that's too late. Right, going into the hearing, in preparing our presentation for the hearing, what we had was the ALJ's construction of made by or as if by a mold, which was, we didn't know at the time, but it was adapted from a dictionary definition, a lay dictionary definition applicable to molding butter, which is clearly completely irrelevant to the technical field here and the intrinsic evidence. I'll have to confirm with my colleague to confirm whether our experts specifically testified about the other portions of the molding meeting the ALJ's claimed construction. I'll get back to you on that. But again, the first time that we were given notice that the ALJ would exclude random irregularities and uneven surfaces from its construction of made by or as if by a mold was in the final initial determination. Right, but it was argued and debated about during the trial. There was not, there was expert evidence offered on that point, I believe, but we'll confirm. Any other questions or may I continue? Please go on, yeah. So our proposed construction was formed component, which in combination with the descriptions in the specification and the surrounding claim language recites sufficient structure to understand what the claim molding covered. What does the word formed do? What work is that doing in the proposed construction, formed component? I mean, to me, it just sounds like component. As opposed to an unformed component or something that's just haphazard. The claim recites that. I'm sorry, what's an unformed component? I mean, it ultimately, even that is, something is being done to create it, right? Formed, in our view, means given a particular shape. When you look at all these filament LEDs that are made by mass manufacturer, they all are remarkably consistent in the form of the molding that they have on them. We believe that evidence supports the conclusion that they are indeed a formed component that also meets the other structural characteristics recited in the claim. And that the reason for finding non-infringement was a selective reliance on only parts of the device when other parts of the device didn't have those same irregularities on even surfaces. And that was a legal error that we would not be able to understand that ALJ was going to make until we got his final rational determination. Did you have more? I wasn't sure if you had more questions for me. Okay. And I would also point out that the Commission's Office of Unfair Import Investigation staff agreed with us and advocated for the same construction of formed component. Which is in alignment with the ALJ's finding of what the plain meaning of molding is. But if I may, I'd like to move on to the next issue, the transparent claim construction. The Commission's rulings regarding the transparent claim limitation should be reversed on both procedural as well as substantive grounds. Procedurally, the Commission acknowledged the party's disputes on the construction of transparent and then declined to fully resolve them in adopting a plain meaning construction. The Commission failed to construe the term transparent as a matter of law as required for the first step in any infringement analysis. As a result, there are only infringement determinations that imply an unstated construction for this court to review. Substantively, the Commission's implicit construction cannot be correct because it imposed an unstated transmissivity threshold without any support from the intrinsic evidence or the expert testimony and is based on the accused products. How would you define what the purpose of this patent is, the objective? To provide for a new form of LED packaging that enables light to be extracted from both the front and the back sides of the device, which contrasts with the prior. Wasn't the whole point that we wanted to maximize the amount of light we're extracting? The problem with the prior art, according to the inventors of this patent, was too much of the light that was being, coming off the emitting layer was getting absorbed, reabsorbed by the emitting layer. And so, therefore, let's get rid of the mirror and let's do a transparent plate. And in doing that, we avoid the reabsorption problems and we maximize the amount of light that's being extracted by the LED. The only issue I would take with that is that the goal is to improve light extraction. I don't think the patents claim anywhere to maximize it or to make it as much as humanly possible. But yes, to improve light extraction. I bet it would be peculiar if you were trying to avoid the problems of reabsorption to create a, to say that the transparent layer here can be something that barely gets any light through. It gets some light through, but only a very modest amount. I think it's important to try and put our thinking about this in the proper timeframe at the time of the inventions. And at the time of the inventions, LEDs were in the very early stages, very rudimentary devices. And the Miyahara prior art reference that is intrinsic evidence as it was cited in the parent and grandparent of the asserted patents that we're raising here on appeal. I'm just curious, what's the priority date here? The priority date is November or December 2006. Okay. So we're talking about almost 20 years ago. The technology was in its very early days. And the Miyahara prior art reference that you were also just discussing in the context of the IPRs of the other patents has a great deal of disclosure in it. But among the things that discloses is that it uses the term transparent to refer to a ceramic body that transmits as little as 1% of the light. Of course, your time is your own, but you've used most of your rebuttal time. Would you like to save some? I would like to save my rebuttal time. Thank you, Your Honor. Ms. Morad, please proceed. Good morning. May it please the court, Uda Morad on behalf of the commission. As you noted, there are multiple independent reasons for the court to affirm the commission determination of no violation. The molding issue alone could be dispositive of this entire appeal. I'd like to first address your question about the invalidity. Patent determinations by the commission don't have preclusive effect. And the invalidity is raised as an affirmative defense, not as a counterclaim. So you don't even have to address those, but if you address them, that would be the effect of those determinations. So just to confirm in the ITC's view, if we were to affirm the commission's invalidity determination as to all the asserted claims, that would have no preclusive effect against the patent owner from reasserting those claims in, say, a district court action. That's correct, Your Honor. So in your view, collateral estoppel principles wouldn't even apply. I'm not sure, but I know that, for example, in their brief regions addressed that point specifically, they said that because for the 529 and the 464 patents, even though the commission found that those patents were invalid, they didn't raise it on appeal because that doesn't prevent them from asserting those patents in district court. Even though it was actually litigated by the same party. That's correct, Your Honor. And it was necessary to the judgment. That's correct. Probably persuasive, but not binding or, I mean, the law is that there is no preclusive effect, so that's how it operates. Our time is short. Why don't you move on to your molding argument? So for the molding issue, the commission correctly construed the term molding in both asserted patents as a complement formed by or as a final rule. So it doesn't require a specific process. It does not, and the commission specifically- But it has to look like it's molded. It has to have this uniform shape that, like a person of ordinary skin in the art here, testified that, looking at these yellow silicone coatings, there's nothing to suggest that they were made by or as if by a mold. And there is no testimony on the other side to rebut that particular testimony. They didn't rely on any expert testimony for their infringement on molding, and that can be problematic for them because infringement is an issue on which they bear the burden of proof. So I'd like to note that- Can I just ask you, Mr. Hansen said something about a, what I think he called it, a procedural error, that something to the effect that regents didn't have adequate notice of the possibility of the construction that the ALJ eventually articulated until it was articulated, by which time trial was over. Can you just address that? Yes, the commission made findings in the context of infringement, but not in the context of claim construction. The claim construction was always made by, a component made by or as if by a mold. Then in the context of infringement, the experts testified that at Appendix 3483, and relying on a demonstrative Appendix 135292, and those are the ones that the ALJ relied on at Appendix 565. So they were on notice at all times about those pictures that the ALJ relied on, and the testimony. The testimony that there are random irregularities, there are irregularities in the surface profile, it's an uneven surface. All of those arguments that were made, all of those findings that were made in the context of infringement, they were made during the evidentiary hearing, and the regents were perfectly aware of those. Was there briefing before the ALJ on the interpretation, the construction of the molding term? There were definitely briefing in the pre-hearing stage and the post-hearing stage. I believe those arguments were made. I wish there was a page in the appendix I can point to, because this argument was raised in the reply brief, but it was definitely made by intervenors. Which argument, sorry? The argument that, you know, that there are random irregularities, that the surface is uneven, and the demonstrative at appendix 135 through 92 specifically shows these red ellipses. I'm sorry, I see now I'm confused, because I think you just flipped back to infringement, and I'm asking about claim construction. Was there briefing on the meaning of the word molding in the claims before the ALJ? That was, that briefing presumably would not include the pictures of the accused products. No, of course. Sorry, I was confused about your question, but definitely at the claim construction stage, and the claim construction order came out earlier in the case. One side wanted, regions wanted a firm component, which is very broad, and would encompass any article of manufacture. And that argument, the article of manufacture, were made before the commission by the intervenors. And on the other side, intervenors wanted a construction where it was made by a specific process, like injection molding, and the commission disagreed. The commission construed the claims as... In the ALJ. I'm sorry, the ALJ and the commission of the ALJ found that the construction was a component made by or from, or as a... Maybe you're just skipping ahead of what the, I think, quite simple question that I was trying to ask. The claim construction was issued in, what, June of 21, the order. The trial, the order was that the final, final preliminary order, whatever it's called, was not until November, so that the trial took place after the announcement of the claim construction. Is that right? I believe so, Your Honor. Oh, well, that's the incredibly simple point I was looking for. I'm sorry, I was confused about your question, but I believe the claim construction order came out, I can tell you. June 15, 2021. Okay. And the construction of molding by Judge Cheney was at A66869, which is in the back of the blue brief. Yes. Okay, that was my procedural point. They had three trial notes. Before the evidentiary hearing. And just responding to the point that they were not on notice of those arguments that, of the infringement findings, they were definitely on notice of those arguments because they were raised at least at the evidentiary hearing. Moving on to the transparent limitation, the commission correctly construed that term and properly resolved the parties' disputes in the context of infringement. I'd like to say about Miyahara, first of all, it's extrinsic evidence, and it was not even raised before the commission. We make that point in our brief. Regent's construction for transparency is very broad and is inconsistent with the intrinsic record. For example, you noted that the purpose of this invention and the present invention is described as extracting light effectively. And the transparent materials that are exemplified in the specification are all highly transmissive, like sapphire, diamond, and glass. And the patentee itself specifically stated during prosecution history of apparent application that transparent was not the same as allowing some light to pass through. Counsel, you're well beyond your time, so we're gonna have to move on. Mr. Brown. So, Your Honor, it's unbolding. As has been explained, the court construed the claim to require as if by a mold. There was then expert reports, there was pre-trial briefing, there was testimony at trial about whether, in fact, the accused products were made as if by a mold. The testimony from Regent... And was there an argument made to the ALJ that it is enough that a portion of the surrounding material has the mold-like character even if other portions do not? There was not that argument made. The testimony presented by Regent's expert on this issue begins at APX3364, and the expert was asked whether it meets the construction as if by a mold, and he explained why. His testimony was the molding shape is consistent or constant along the length of the filament, and therefore, we can say the yellow component is formed as if by a mold. So it's the opposite. The argument presented to the ALJ was that the shape was consistent along the entire length, not for a portion. The ALJ considered that testimony at APX562 through 564. He considered the opposing testimony, and he found it was evident that the shape was not consistent along the length, and he found that because it was not consistent along the length, it was not made as if by a mold, and he found it was undisputed that it was not molded. So that is sufficient by itself to affirm the result here. There was a factual finding supported by substantial evidence, and it's sufficient to dispose of the case. Your Honors, have any other questions? All right, do you have any other questions for me to address? That's usually him. Okay. Sitting down. You'll catch on eventually. Okay. May it please the Court, Your Honors. To respond to the molding issue and the point that Judge Taranto is putting his finger on, the procedural issue was that the claim construction order construed the term molding to be made by or as if by a mold. What was not stated in that order was that the ALJ would, at the hearing, determine that random irregularities and uneven surfaces were incompatible with being formed as if by a mold. That's what we didn't have notice of until the hearing. And if we're going to take the dictionary definition that the ALJ's construction came from of molding butter, I mean, all of us have experience with pats or sticks of butter, and none of them are perfect and without imperfection. What did the other side's expert reports say about why the accused products do not have the characteristics as if made by a mold? I don't have a perfect recollection. My recollection is that Dr. Shanfield relied extensively, if not entirely, on the manufacturing process, this glob-top process that he believed nobody would call that a mold. How about Eden? At the moment, I'm not remembering what Professor Eden said about that. I apologize. So to counsel's comment about the Miyahara reference, as I pointed out, the Miyahara reference is intrinsic evidence. And this court, under the Interactive Gift Express case, explained that in the context of plain construction, waiver has not been invoked to prevent a party from clarifying or defending the scope of its original construction. And that's all we're doing with the Miyahara reference, is pointing out how it is consistent with and supportive of our proposed construction of transparent. And if I may make one point on obviousness. The obviousness conclusion here cannot be sustained because there is not substantial evidence in the record. And the ALJ expressly found that the record is devoid of evidence of obviousness of the SAFIRE growth substrate limitation. The only thing that the commission's opinion pointed to as support, as substantial evidence for that limitation, was the intervener's pre-hearing brief. You didn't bring up the SAFIRE growth substrate in your pre-hearing brief, is that right? That was not something that we intended to present rebuttal evidence at. Right, I guess I'm trying to understand what is the point of the pre-hearing brief, but to identify the issues you want to bring up during the actual trial. It can constrain- The whole notion that the point of rules is to try to funnel down exactly what are the disputed issues. I agree that the pre-hearing brief can constrain what we can present in rebuttal at trial. It can't eliminate the presumption of validity and it can't remove from the interveners their burden to prove by convincing evidence only. If the claim had 80 limitations in it, and you disputed in the pre-hearing brief one of those 80 limitations that's being met by the prior art, then is it fair for you after the trial to then say, well, I'm not satisfied that the other side put on enough of a case for the 79 other limitations, and what they needed to do was go line by line, dime by dime, and explain in a very comprehensive way why each of the other 79 limitations are actually taught by the prior art and one would be motivated to combine all of them from the prior art into a single claim. That seems a bit wasteful, and the whole point of why the rules are set up to identify what are the actual disputed issues for debate and for resolution by the ALJ. The problem here is that Dr. Levy testified only that with regard to the SAFIRE ghost substrate limitation and some other limitations that the Yamazaki and Minato references invalidate all of the limitations of the claims. He provided no explanation of how those limitations are disclosed. I know that Judge Chen just asked you this question about this point, but I need, as a point of clarification, to make sure that I keep proceedings fair. Did you bring up this obviousness question in your opening argument today? I did not, because I was short on time. Which also means they didn't get a chance to address it, so you don't get the opportunity in rebuttal to bring up a new argument that your opponents were prevented from addressing because you didn't bring it up first, so if it's with Judge Chen's permission, I'd like to move on. Okay. That's all I have, Your Honor. I believe I have all the time. Thank you. I thank all the counsel this case has taken under submission.